UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

SEBASTIAN PATRICK WILLIAMS,

                Plaintiff,

v.

UNKNOWN VAN DAM et al.,

                Defendants.

_____/

Case No. 1:25-cv-560

Honorable Robert J. Jonker

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court

will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Under the Prison Litigation

Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss

any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state

a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from

such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's

*pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept

Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v.

Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's

complaint for failure to state a claim against Defendants Burgess, Clouse, Erway, Pelky, Bassett,

and Russell. The Court will also dismiss, for failure to state a claim, the following claims against

remaining Defendant Van Dam: (1) Plaintiff's claims pursuant to 42 U.S.C. § 1981(a); (2)

Plaintiff's claims pursuant to 42 U.S.C. § 1985(3); (3) any intended Fourteenth Amendment due

process claims premised upon the violation of MDOC policy; (4) any intended personal capacity

claims under RLUIPA; and (5) any intended official capacity claims for damages under both § 1983 and RLUIPA. The following claims against Defendant Van Dam remain in the case: (1) Plaintiff's personal capacity First Amendment free exercise and retaliation claims, as well as his Fourteenth Amendment equal protection claim, for damages; (2) Plaintiff's official and personal capacity First Amendment free exercise and retaliation claims, as well as his Fourteenth Amendment equal protection claim, for declaratory and injunctive relief; and (3) Plaintiff's official capacity claim for declaratory and injunctive relief under RLUIPA.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following ECF personnel: Warden Michael Burgess, Deputy Warden J. Clouse, Assistant Deputy Warden J. Erway, Chaplain Unknown Van Dam, Acting Inspector K. Pelky, and Grievance Coordinator T. Bassett. Plaintiff also sues MDOC Officer of Legal Affairs, Grievance Section Manager Richard D. Russell. Plaintiff states that he is suing Defendants in their official capacities only. (Compl., ECF No. 1, PageID.3.) However, as set forth below, Plaintiff is seeking declaratory and injunctive relief, as well as damages. Accordingly, in light of Plaintiff's request for damages, the Court will generously construe Plaintiff's complaint as bringing claims against Defendants in their respective personal capacities as well.

Plaintiff alleges that on September 12, 2024, Defendant Van Dam called out Plaintiff and inmate Adams to meet with him prior to the Nation of Islam study group, which both Plaintiff and inmate Adams intended to participate in. (*Id.*, PageID.4.) Defendant Van Dam expressed concerns about inmate Adams "standing near the door" and Plaintiff "asking Adams is the Mosque secure

2

prior to [the] opening prayer ceremony." (*Id.*) Plaintiff explained that innate Adams was at the door "not to impede anyone from entering or leaving the room, but to place a hand up to draw attention to himself for the purpose of anyone disturbing the Nation of Islam Study Group opening prayer ceremony." (*Id.*) Defendant Van Dam read from an MDOC policy directive concerning militaristic behavior, and Plaintiff assured Defendant Van Dam that "no prisoner [during the] services would be anywhere near the door of room 37, and the Study Group only salute[s] [the] Nation of Islam flag." (*Id.*)

Plaintiff explains that after the opening prayer ceremony, the study group "always give[s] homage to the Honorable Elijah Muhammad," the Nation of Islam founder, by "reciting quotes from the Nation of Islam literature." (*Id.*) That afternoon, Plaintiff asked the study group "Whose soldiers are we?" (*Id.*) Plaintiff notes that this was a quote from the "Meaning of F.O.I," which was published by the Honorable Elijah Muhammad Educational Foundation. (*Id.*) Plaintiff repeated this line three times, and the study group responded, "Muhammad's soldiers sir." (*Id.*) Plaintiff then said, "If we're soldiers for Muhammad, let's get after his people." (*Id.*, PageID.4–5.) The study group responded, "Yes, sir!" (*Id.*, PageID.5.)

The next day, September 13, 2024, Plaintiff was summoned to the base area to receive a misconduct ticket that had been written by Defendant Van Dam. (*Id.*) The ticket charged Plaintiff with insolence. (*Id.*) Non-party Sergeant Nickerson reviewed the ticket with Plaintiff. (*Id.*)

A week later, on September 20, 2024, Plaintiff appeared before non-party Captain Boerema for his misconduct hearing. (*Id.*) Plaintiff pleaded not guilty and explained to Captain Boerema that the "terminology of 'Muhammad's Soldier' is no different th[a]n a Christian saying they are [a] 'Soldier for Christ.'" (*Id.*) Captain Boerema told Plaintiff that he would take the issue under

advisement. (*Id.*) Ultimately, on October 2, 2024, Captain Boerema found Plaintiff not guilty of insolence.[1] (*Id.*)

On October 3, 2024, the Nation of Islam study group had another meeting. (*Id.*) During the meeting, Plaintiff asked, "Whose soldiers are we?" (*Id.*) The group responded, "Muhammad!" (*Id.*) Plaintiff then asked, "Which Muhammad?" (*Id.*) The group replied, "The Honorable Elijah Muhammad!" (*Id.*) Plaintiff then asked, "What did Muhammad do?" (*Id.*) The group responded, "He paid a price to redeem the Black man, sir!" (*Id.*) Plaintiff stated, "If we're soldiers for Muhammad, let's get after his people." (*Id.*, PageID.6.) The group replied, "Yes, sir." (*Id.*) After that call and response, however, Defendant Van Dam told Plaintiff, "I told you [that] you cannot use those words." (*Id.*) Plaintiff tried to explain that the words and phrases did not violate any MDOC policy directives, and that they were found in the Nation of Islam literature.[2] (*Id.*) Plaintiff offered the literature to Defendant Van Dam, but Defendant Van Dam refused to review it. (*Id.*)

---

[1] The MDOC defines "insolence" as "[w]ords, actions, or other behavior which is intended to harass, degrade, or cause alarm in an employee." *See* MDOC Policy Directive 03.03.105, Attach. B.

[2] Plaintiff has attached a copy of MDOC Policy Directive 05.03.150, which governs religious beliefs and practices of prisoners, to his complaint. (ECF No. 1-13.) Policy Directive 05.03.150 provides in relevant part:

> When attending group religious services or activities, prisoners shall not engage in conduct that poses a threat to the safety, security, or good order of the facility, including but not limited to (1) Guarding, controlling, or positioning themselves so as to appear to be guarding or controlling, the entrance to or exit from the religious service or activity (2) Militaristic type behavior (e.g., saluting each other; marching) shall not be permitted. Failure to comply with these requirements may result in the prisoner being required to leave the area or result in termination of the service or activity.

*See id.*, ¶¶ AA.

Plaintiff then told Defendant Van Dam that he had been found not guilty of the misconduct ticket, and Defendant Van Dam was "enraged." (*Id.*) Defendant Van Dam shouted, "We'll see what the Deputy has to say about it." (*Id.*) Plaintiff alleges that he does not know which deputy warden Defendant Van Dam spoke to, but that after the service, Defendant Van Dam told Plaintiff, "If you use those words again you will get a DDO (Disobeying a Direct Order) Misconduct Report." (*Id.*)

Plaintiff then asked Defendant Van Dam if he was threatening Plaintiff with a misconduct report for practicing his religion. (*Id.*) Defendant Van Dam responded, "Yes, and you can write a grievance if you don't like it." (*Id.*) Plaintiff did write a grievance "requesting not to be subjected to the personal abuse of Chaplain Van Dam because of his religious beliefs, and discriminated against because of his religious practices." (*Id.*)

During the study group session on October 10, 2024, Plaintiff opened with the same words and phrases for which Defendant Van Dam threatened to issue a misconduct report. (*Id.*, PageID.7.) Plaintiff alleges that Defendant Van Dam left the room and returned with several officers, announcing that the group was cancelled without providing any reason. (*Id.*) Plaintiff believes that Defendant Van Dam went to Defendants Pelky and Bassett, who told Defendant Van Dam to cancel the service. (*Id.*) Plaintiff contends that this was done in violation of MDOC Policy Directive 05.03.150, which provides that only the warden can cancel a religious service, and the warden must notify the MDOC's Assistant Deputy Director. (*Id.*)

On October 11, 2024, Plaintiff sent a letter to Defendant Clouse asking for assistance with the matter. (*Id.*) Plaintiff never received any response. (*Id.*)

On October 15, 2024, Defendant Pelky interviewed Plaintiff regarding his prior grievance against Defendant Van Dam. (*Id.*) Plaintiff showed Defendant Pelky the literature in question, but

5

Defendant Pelky "refused to review the documentation or photocopy it as evidence for the grievance process." (*Id.*) Defendant Pelky told Plaintiff that he did not believe that Defendant Van Dam had displayed any discrimination and that the word "soldier" was offensive within a prison setting. (*Id.*, PageID.8.)

Plaintiff explained to Defendant Pelky that Captain Boerema had found Plaintiff not guilty "of the misconduct report Chaplain Van Dam wrote for using the word soldier in a religious context." (*Id.*) Plaintiff also asked why Defendant Van Dam, in August and September of 2024, had refused to submit to the "PBF Committee" proposals regarding religious supplies requested by Plaintiff. (*Id.*) Defendant Pelky responded, "[I'll] ask Chaplain Van Dam, but do [you] want to sign off on the grievance?" (*Id.*) Plaintiff indicated he would sign off on the grievance once he learned why Defendant Van Dam had refused to submit procurement requests from the Nation of Islam group to the PBF committee. (*Id.*)

On October 17, 2024, Plaintiff sent a letter to Defendant Erway asking for assistance in procuring religious supplies because Defendant Erway is a member of the PBF Committee. (*Id.*) Plaintiff asked for DVDs for the Savior's Day Event in February of 2025, and Qur'ans for Ramadan in March of 2025. (*Id.*) Plaintiff never received a response from Defendant Erway. (*Id.*)

On October 23, 2024, Defendant Pelky denied Plaintiff's Step I grievance against Defendant Van Dam. (*Id.*, PageID.9.) The next day, Plaintiff submitted a letter to Defendant Bassett's office, asking for a Step II grievance appeal form. (*Id.*) Plaintiff received that form on November 3, 2024. (*Id.*) Plaintiff submitted his Step II appeal to the Grievance Coordinator's Office on November 4, 2024. (*Id.*) Plaintiff did so by placing the appeal in the prison mailbox. (*Id.*, PageID.10.) On November 19, 2024, Plaintiff's Step II appeal was denied by Defendant Burgess as untimely filed. (*Id.*) On November 22, 2024, Plaintiff submitted his Step III appeal,

arguing that he could not be "penalize[d] for a slow moving internal institutional mailing system." (*Id.*)

Plaintiff contends that during this time period, the MDOC revised Policy Directive 05.03.150 to include and acknowledge several religious groups, one of which was the Nation of Gods and Earth. (*Id.*)

On December 21, 2024, Plaintiff's Step III grievance was denied by Defendant Russell. (*Id.*)

On December 26, 2024, Plaintiff learned that Defendant Van Dam had submitted procurement requests on behalf of the Nation of Gods and Earth and the Moorish Science Temple of America, but not for the Nation of Islam group. (*Id.*) That day, during Nation of Islam services, Plaintiff asked Defendant Van Dam about that matter. (*Id.*) Defendant Van Dam responded that procurement requests can be submitted each month. (*Id.*) When Plaintiff asked why his previous requests had not been submitted to the PBF Committee, Defendant Van Dam responded, "I'm not going to answer you." (*Id.*) Plaintiff asked, "Do you even want us or a Nation of Islam group at this facility?" (*Id.*) Defendant Van Dam responded, "Not really." (*Id.*) Given that response, Plaintiff alleges that the study group made the decision to "no longer attend services at [ECF]." (*Id.*)

Plaintiff filed another grievance against Defendant Van Dam on December 30, 2024. (*Id.*) In the grievance, Plaintiff described Defendant Van Dam's "blatant display of bigotry, bias[,] and discrimination." (*Id.*) On January 12, 2025, Plaintiff received his grievance back from Defendant Bassett. (*Id.*, PageID.11–12.) Defendant Bassett had written "prohibited language" and had circled "Van Dam blatant display of bigotry, bias." (*Id.*, PageID.12.) Plaintiff presumed that his grievance had been rejected. (*Id.*) Plaintiff received a step II grievance appeal form on January 20, 2025. (*Id.*)

Plaintiff claims that on February 7, 2025, the minutes from the PBF and Store Committee meeting for January 28, 2025, were posted in his housing unit. (*Id.*) From those minutes, Plaintiff learned that after Defendant Van Dam essentially dissolved the Nation of Islam service, he had submitted procurement requests for materials needed by the Nation of Islam in February and March of 2025 to the committee. (*Id.*) That same day, Plaintiff received the Step II grievance response from Defendant Burgess, upholding the rejection of his Step I grievance. (*Id.*) Defendant Russell upheld the rejection in the Step III response issued on March 17, 2025. (*Id.*, PageID.13.)

Based upon the foregoing, Plaintiff asserts violations of his First and Fourteenth Amendment rights. Plaintiff also references that he is bringing suit pursuant to 42 U.S.C. §§ 1981(a), 1985(3), and 2000cc-1 (the Religious Land Use and Institutionalized Persons Act (RLUIPA)). (Compl., ECF No. 1, PageID.1.) The Court also construes Plaintiff's complaint to assert Fourteenth Amendment equal protection claims as well as constitutional claims premised upon the handling of his grievances. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.14–15.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A.    Claims Under 42 U.S.C. § 1981(a)

Plaintiff references that he is bringing suit pursuant to 42 U.S.C. § 1981(a). (Compl., ECF No. 1, PageID.1.) That section provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). Section 1981 essentially prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors and provides a cause of action for race-based employment discrimination. In *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989), the Supreme Court held that § 1981 does not itself provide a remedy against state actors. *Id.* at 731. Plaintiff's claims are against state actors. For that reason alone, Plaintiff cannot maintain his claims pursuant to § 1981. Regardless, Plaintiff fails to allege any facts suggesting that any of the named Defendants impeded Plaintiff's right to make and enforce contracts or that he faced race-based employment discrimination. Accordingly, Plaintiff's claims pursuant to § 1981 will be dismissed.

9

### B.    Claims Under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1.    Claims Against Defendants Burgess, Clouse, Erway, Pelky, Bassett, and Russell

The Court has construed Plaintiff's complaint to assert numerous constitutional claims against Defendants Burgess, Clouse, Erway, Pelky, Bassett, and Russell premised upon their handling of Plaintiff's grievances and letters about his interactions and concerns with Defendant Van Dam.

As an initial matter, various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Moreover, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the

10

grievance process, any interference with the grievance process or inadequate responses to Plaintiff's grievances did not deprive Plaintiff of due process.

Moreover, to the extent that Plaintiff intended to allege that his right to petition the government was violated by any interference with the grievance process, this right is not violated by a failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Likewise, any inaction or action by Defendants Burgess, Clouse, Erway, Pelky, Bassett, and Russell did not bar Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *Cf. Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by

policy or by the interference of officials, the grievance process is not available, and exhaustion is not required).

Furthermore, § 1983 liability may not be imposed simply because an official denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Moreover, to the extent that Plaintiff seeks to hold Defendants Burgess, Clouse, Erway, Pelky, Bassett, and Russell liable due to their respective supervisory positions, he fails to state such a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *See Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege facts suggesting that Defendants Burgess, Clouse, Erway, Pelky, Bassett, and Russell encouraged or condoned the conduct of Defendant Van Dam, or

12

authorized, approved, or knowingly acquiesced in that conduct. As set forth *supra*, all of these individuals were involved in responding to, or failing to respond, to Plaintiff's grievances and letters, but that is insufficient to establish liability under § 1983. *See Shehee*, 199 F.3d at 300.

Plaintiff mentions Defendants Pelky and Bassett in the section of his complaint concerning events that occurred on October 10, 2024, when he states: "Upon information and belief, [Defendant] Van Dam took his frustration to [Defendants] Pelky and . . . Bassett, who[] in turn told [Defendant] Van Dam to cancel the service." (Compl., ECF No. 1, PageID.7.) Plaintiff, however, provides no *facts* to support this speculative assertion. As pled, Plaintiff's complaint simply does not permit the Court to infer that Defendants Pelky and Bassett encouraged or condoned Defendant Van Dam's conduct, or authorized, approved, or knowingly acquiesced in that conduct.

Accordingly, for all of the foregoing reasons, Plaintiff has failed to state a cognizable claim pursuant to § 1983 against Defendants Burgess, Clouse, Erway, Pelky, Bassett, and Russell. The Court, therefore, will dismiss those Defendants for Plaintiff's failure to state a claim upon which relief can be granted against them.

### 2. Claims Against Defendant Van Dam

#### a. First Amendment

##### (i) Free Exercise

The Free Exercise Clause of the First Amendment to the United States Constitution provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I. To establish that this right has been violated, "[f]irst, a determination must be made: (1) whether the belief or practice asserted is religious in the person's own scheme of things, and (2) whether it is sincerely held[;] . . . [s]econdly, it must be determined whether the challenged practice of the prison officials infringes on the religious belief[; and]. . . "[t]he next step in the

proper analysis is to inquire whether the challenged practice of the prison officials furthers some legitimate penological objective." *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987).

Here, Plaintiff contends that Defendant Van Dam infringed upon his Nation of Islam practice by: (1) directing Plaintiff not to use quotes such as "Muhammad's soldiers" during the study group meetings, even though such quotes are from Nation of Islam literature; (2) refusing to submit procurement requests for religious items needed for certain Nation of Islam observances to the relevant committee; and (3) voicing his desire to not have a Nation of Islam group at ECF, which effectively led the study group to cease attending services. At this stage of proceedings, the Court accepts as true Plaintiff's allegations that he sincerely holds religious beliefs. Likewise, there is little doubt that group worship and observing certain rites are common religious practices.

The next consideration is "whether the challenged practice of the prison officials infringes on the religious belief." *Kent*, 821 F.2d at 1224–25. A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). "[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. Of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[T]he Government substantially burdens an exercise of religion when it 'place[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs . . . or effectively bar[s] his sincere faith-based conduct.'" *New Doe Child #1 v. Cong. of the U.S.*, 891 F.3d 578, 589 (6th Cir. 2018) (quoting *Haight v. Thompson*, 763 F.3d 554, 565 (6th Cir. 2014)). It "is a difficult threshold to cross." *Living Water Church of God*, 258 F. App'x at 736. "[A] 'substantial burden' must place more than an inconvenience on religious exercise." *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A particular government action will not be considered a substantial burden

merely because it "may make [the] religious exercise more expensive or difficult . . . ." *Id*. Here, Plaintiff's allegations regarding the burdens Defendant Van Dam has placed upon Plaintiff's religious practices permit an inference that the burden is substantial to the extent that it effectively bars Plaintiff's sincere faith-based conduct.

Prison officials may impinge on the free exercise right, even impose a substantial burden, where their actions are "reasonably related to legitimate penological interests." *See Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

> 1.      does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> 2.      are there alternative means of exercising the right that remain open to prison inmates;
>
> 3.      the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and,
>
> 4.      whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89–91). It is Defendant Van Dam's burden to offer a legitimate penological interest to justify the infringement; it is not Plaintiff's burden to rule out all possible legitimate penological interests. *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (explaining that "[t]he prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs. Defendant Van Dam then bears the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these [articulated] concerns

were irrational" (internal quotation marks, citations, and footnote omitted)).[3] Therefore, at this

stage of the proceedings, Plaintiff's First Amendment free exercise claim will not be dismissed.

### (ii)     Retaliation

The Court has construed Plaintiff's complaint to assert a First Amendment retaliation claim

against Defendant Van Dam. Retaliation based upon a prisoner's exercise of his or her

constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th

Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must

establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken

against him that would deter a person of ordinary firmness from engaging in that conduct; and (3)

the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff

must be able to show that the exercise of the protected right was a substantial or motivating factor

in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th

Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff has alleged sufficient facts regarding the first element of a retaliation claim.

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf,

whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden*

*Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison

officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity

---

[3] The United States Court of Appeals for the Second Circuit has recently called into question *Salahuddin*'s statement regarding whether the prisoner must show a "substantial burden." *Kravitz v. Purcell*, 87 F.4th 111, 125–26 (2d Cir. 2023). The crux of the *Kravitz* analysis, however, is the rejection of any inquiry "into the centrality of a litigant's religious beliefs" in determining the extent of the burden, choosing instead to focus on "a showing of the plaintiff's sincerity to establish a *prima facie* free exercise violation." *Id.* at 123–24. There is nothing in the *Kravitz* opinion to suggest that the alleged infringer is relieved of the obligation to come forward with the justifying legitimate penological objective.

under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741). Likewise, Plaintiff's practice of his religion (Nation of Islam) certainly qualifies as protected conduct.

Petitioner has also alleged sufficient facts with respect to the second and third prongs of a retaliation claim. Within his complaint, Plaintiff contends that Defendant Van Dam: (1) issued Plaintiff a misconduct ticket for insolence because of Plaintiff's recitation of quotes from the Nation of Islam literature during study group meetings; (2) threatened to issue Plaintiff a misconduct for disobeying a direct order if Plaintiff used those quotes again; (3) cancelled the Nation of Islam service on October 10, 2024, after Plaintiff filed a grievance regarding Defendant Van Dam's actions; and (4) refused to submit Nation of Islam procurement requests to the PBF Committee. Notably, Plaintiff alleges that when he asked Defendant Van Dam if he was threatening to issue Plaintiff a misconduct for disobeying a direct order if Plaintiff practiced his religion, Defendant Van Dam responded, 'Yes, and you can write a grievance if you don't like it." (Compl., ECF No. 1, PageID.6.) Taking Plaintiff's allegations as true, as the Court must at this stage of proceedings, Plaintiff's First Amendment retaliation claim against Defendant Van Dam may not be dismissed on initial review.

b.      **Fourteenth Amendment**

(i)      **Equal Protection**

Plaintiff's complaint can also be construed to assert a Fourteenth Amendment equal protection claim against Defendant Van Dam. Specifically, Plaintiff alleges that Defendant Van Dam told Plaintiff that he did not want a Nation of Islam group at ECF. He also avers that Defendant Van Dam repeatedly refused to submit the study group's procurement requests to the relevant committee, but submitted requests received from other religious groups.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). A law or official action that adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, implicates the Equal Protection Clause. *See City of Cleburne*, 473 U.S. at 440. To establish a violation of the Equal Protection Clause, an inmate must show that a defendant purposefully discriminated against him. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265–66. To show discriminatory purpose, an inmate "can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011).

Given Plaintiff's allegations that Defendant Van Dam acted as he did because of Plaintiff's membership in the Nation of Islam study group, Plaintiff has alleged sufficient facts to avoid dismissal of his Fourteenth Amendment equal protection claim against Defendant Van Dam.

### (ii)    Violation of MDOC Policy

Plaintiff suggests that Defendant Van Dam violated MDOC Policy Directive 05.03.150 on October 10, 2024, by cancelling the Nation of Islam services. (Compl., ECF No. 1, PageID.7.) Plaintiff contends that per that Policy Directive, only a Warden can cancel a religious service. (*Id.*)

The Court has liberally construed Plaintiff's reference to MDOC Policy Directive 05.03.150 as an attempt to bring a claim under § 1983 for a due process violation. However, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertion that Defendant Van Dam violated MDOC rules fails to state a claim under § 1983.

Moreover, "[w]ithout a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts have routinely recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegation that Defendant Van Dam violated MDOC rules fails to raise a cognizable § 1983 claim, and this claim will be dismissed.

### C.    Claims Under 42 U.S.C. § 1985(3)

Plaintiff also references that he is bringing suit under 42 U.S.C. § 1985(3). To maintain a cause of action for conspiracy under § 1985(3),[4] a plaintiff must show the following four elements:

---

[4] Subsections (1) and (2) of § 1985 do not apply. Subsection (1) is inapplicable because Plaintiff does not allege a conspiracy to interfere with federal officers in the performance of their duties.

(1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998). Moreover, a plaintiff must allege that there existed "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *See Kush v. Rutledge*, 460 U.S. 719, 726 (1983); *see also Collyer*, 98 F.3d at 233.

The Sixth Circuit has "clarified that § 1985(3) applies only to conspiracies targeting individuals based on classifications—like race or religion—that receive heightened scrutiny under the Equal Protection Clause." *Rives v. Univ. of Tenn.*, No. 24-5336, 2024 WL 5103829, at *5 (6th Cir. Dec. 13, 2024) (citing *Post v. Trinity Health-Mich.*, 44 F.4th 572, 580 (6th Cir. 2022)). As discussed *supra*, Plaintiff has set forth a plausible Fourteenth Amendment equal protection claim against Defendant Van Dam based upon Plaintiff's allegations that Defendant Van Dam expressed that he did not want a Nation of Islam study group at ECF and that Defendant Van Dam repeatedly refused to submit the study group's procurement requests to the relevant committee, but submitted requests received from other religious groups.

---

*See* 42 U.S.C. § 1985(1). The first clause of subsection (2) is also inapplicable because Plaintiff does not allege that Defendants conspired to influence parties, witnesses, or jurors in federal court proceedings. *See* 42 U.S.C. § 1985(2). In addition, the second clause of subsection (2) is inapplicable because Plaintiff does not allege that Defendants conspired to "interfere with due process in state courts with the intent to deprive persons of their equal protection rights." *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006).

Plaintiff, however, fails to set forth facts suggesting a conspiracy between Defendant Van Dam and at least one other named Defendant. Instead, Plaintiff simply speculates that Defendant Van Dam conspired with others to violate Plaintiff's rights; he does not set forth any *facts* from which the Court could infer that Defendants "made an agreement or plan to engage in illegal, discriminatory conduct." *See Lopp v. Washington*, No. 1:22-cv-1135, 2025 WL 491416, at *3 (W.D. Mich. Jan. 23, 2025), *report and recommendation adopted*, 2025 WL 490055 (W.D. Mich. Feb. 13, 2025); *see also Saunders v. Ghee*, No. 94-4073, 1995 WL 101289, at *1 (6th Cir. Mar. 9, 1995) ("Even under the most liberal construction, Saunders's complaint under § 1985(3) merely alleges broad, conclusory language without the factual allegations necessary to support a conspiracy theory."); *O'Hara v. Mattix*, 255 F. Supp. 540, 542 (W.D. Mich. 1966) ("The courts will not accept mere allegations of conspiracy; there must be some showing of facts to support the conspiracy."). Accordingly, for these reasons, Plaintiff's claims pursuant to 42 U.S.C. § 1985(3) will be dismissed.

### D.    RLUIPA Claims

Plaintiff also asserts that he is bringing suit pursuant to the RLUIPA, 42 U.S.C. §§ 2000cc-1 *et seq.* RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). RLUIPA does not define the phrase "substantial burden." The Sixth Circuit, however, has concluded that the phrase "has the same meaning under RLUIPA as provided by the Supreme Court in its 'free exercise' decisions." *Mitchell v. Schroeder*, No. 2:21-cv-109, 2022 WL 263212, *4–5 (W.D. Mich. Jan. 28, 2022) (citations omitted). Accordingly, a burden is substantial "where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* at *5 (citations

21

omitted). Likewise, a burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise." *Id.* (citations omitted).

As discussed *supra*, Plaintiff has sufficiently alleged that Defendant Van Dam violated his First Amendment free exercise rights. Plaintiff, therefore, has also sufficiently alleged that Defendant Van Dam violated his rights under RLUIPA. For the same reasons set forth above, Plaintiff's complaint does not set forth any facts from which the Court could infer that the other named Defendants were personally involved in imposing a substantial burden on Plaintiff's religious exercise. Accordingly, any intended RLUIPA claims against Defendants Burgess, Clouse, Erway, Pelky, Bassett, and Russell will be dismissed.

### E.    Capacity Issues

The Court has determined that Plaintiff may proceed upon his First Amendment free exercise and retaliation, his Fourteenth Amendment equal protection, and his RLUIPA claims against Defendant Van Dam. As set forth above, Plaintiff seeks declaratory and injunctive relief, as well as damages. Although Plaintiff explicitly states that he is suing Defendant Van Dam in his official capacity only, the Court has generously construed the complaint to assert a personal capacity claim as well given Plaintiff's request for damages. However, even though Plaintiff has stated claims for relief under both § 1983 and RLUIPA, they are not necessary claims upon which relief can be granted under every possible combination of claim and capacity.

#### 1.    First and Fourteenth Amendment Claims

A plaintiff may sue state officials in their individual capacities for damages under § 1983. *See, e.g.*, *Turker v. Ohio Dep't of Rehab. and Corr.*, 157 F.3d 453, 457 (6th Cir. 1998). Thus, Plaintiff's remaining First and Fourteenth Amendment claims against Defendant Van Dam for damages will remain in the suit.

Plaintiff also appears to seek damages from Defendant Van Dam in his official capacity. A suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity, in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Thus, Plaintiff could not pursue a damages claim against the State of Michigan or the MDOC under § 1983, and he cannot pursue such a claim against Defendant Van Dam in his respective official capacity. Accordingly, Plaintiff's official capacity claim against Defendant Van Dam for damages under § 1983 is properly dismissed because relief cannot be granted on such a claim.

Plaintiff also seeks declaratory and injunctive relief. An official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex parte Young* for injunctive relief should not be treated as an action against the state. *Graham*, 473 U.S. at 167 n.14. Instead, the doctrine is a fiction recognizing that

23

unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, in itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief). Here, the violation is ongoing in that Plaintiff, presumably, continues to be prevented from freely exercising his religious beliefs under the MDOC's policy directive regarding the religious beliefs and practices of prisoners. *See* MDOC Policy Directive 05.03.150 (eff. Oct. 28, 2024).

A plaintiff can sue state officers to enjoin an unconstitutional state policy. When challenging a state policy, the officer sued must "have some connection" with the policy's enforcement or execution. *Ex parte Young*, 209 U.S. at 157. As long as a named defendant is "actively involved" with the challenged conduct, they can be sued for injunctive relief without implicating the Eleventh Amendment. *Id.*; *accord Doe v. DeWine*, 910 F.3d 842, 848–49 (6th Cir. 2018). MDOC Policy Directive 05.03.150[5] provides that a chaplain, like Defendant Van Dam, receives and refers requests for religious group recognition, schedules attendance at services and activities, receives and process prisoner religious preference declarations, handles requests for holy

---

[5] Plaintiff cites and relies upon the MDOC Policy Directive 05.03.150 in his allegations. (Compl., ECF No. 1, PageID.7, ¶ 23.) He has also attached a copy of the policy to his complaint.

day observation, approves temporary prisoner leadership of group religious services, reviews and processes religious accommodation requests, and coordinates the religious programming at the facility. *See generally* MDOC Policy Directive 05.03.150. Because Plaintiff is still incarcerated at ECF, Defendant Van Dam continues to enforce the religious beliefs and practices policy with regard to Plaintiff. Accordingly, Plaintiff's claims for declaratory and injunctive relief against Defendant Van Dam under § 1983 will remain in the case.

### 2.    RLUIPA Claim

RLUIPA does not create a cause of action against an individual in that individual's personal capacity. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd Sossamon v. Texas*, 563 U.S. 277 (2011);[6] *see also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) ("[RLUIPA] does not create a cause of action against state employees in their personal capacity."); *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) ("RLUIPA does not provide a cause of action against state officials in their individual capacities . . . .").[7] Accordingly, any intended RLUIPA claim against Defendant Van Dam in his individual capacity will be dismissed. Likewise, RLUIPA does not permit damages claims against prison officials in their official capacities. *See Sossamon v. Texas*, 563 U.S. 277, 285–86 (2011) (holding that RLUIPA did not abrogate sovereign

---

[6] The United States Supreme Court granted certiorari only on the question of "[w]hether an individual may sue a State or state official in his official capacity for damages for violation of" RLUIPA. *Sossamon v. Texas*, 560 U.S. 923 (2010). Thus, the Supreme Court left undisturbed and unreviewed the Fifth Circuit's holding that "RLUIPA does not create a cause of action against defendants in their individual capacities." *Sossamon*, 560 F.3d at 331.

[7] In *Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014), the Sixth Circuit analyzed whether Congress's spending power permitted a RLUIPA damages claim against an individual prison official in the official's personal capacity. The court rested its determination that such claims were not permitted on its conclusion that "appropriate relief" under RLUIPA was not a sufficiently clear statement to authorize such a damages claim. *Id*. at 567–69. The Sixth Circuit stopped short of adopting the reasoning that swayed the Fifth Circuit in *Sossamon* and subsequent federal circuit court panels. *Haight*, however, did not squarely present the issue whether a personal capacity suit for injunctive or declaratory relief might be available.

immunity under the Eleventh Amendment); *see also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."). Thus, any intended damages claim against Defendant Van Dam under RLUIPA will be dismissed as well. For the same reasons that Plaintiff may pursue his claims for declaratory and injunctive relief under § 1983, he may pursue such claims against Defendant Van Dam in his official capacity under RLUIPA as well.

## <u>Conclusion</u>

Having conducted the review required by the PLRA, the Court determines that Defendants Burgess, Clouse, Erway, Pelky, Bassett, and Russell will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Van Dam: (1) Plaintiff's claims pursuant to 42 U.S.C. § 1981(a); (2) Plaintiff's claims pursuant to 42 U.S.C. § 1985(3); (3) any intended Fourteenth Amendment due process claims premised upon the violation of MDOC policy; (4) any intended personal capacity claims under RLUIPA; and (5) any intended official capacity claims for damages under both § 1983 and RLUIPA. The following claims against Defendant Van Dam remain in the case: (1) Plaintiff's personal capacity First Amendment free exercise and retaliation claims, as well as his Fourteenth Amendment equal protection claim, for damages; (2) Plaintiff's official and personal capacity First Amendment free exercise and retaliation claims, as well as his Fourteenth Amendment equal protection claim, for declaratory and injunctive relief; and (3) Plaintiff's official capacity claim for declaratory and injunctive relief under RLUIPA.

An order consistent with this opinion will be entered.


Dated:    June 2, 2025                              /s/ Robert J. Jonker
                                                    Robert J. Jonker
                                                    United States District Judge